## THE ANNIE FAXON.

### OREGON RY. & NAV. CO. et al. v. LAWTON et al.

(Circuit Court of Appeals, Ninth Circuit. June 15, 1896.)

No. 249.

1. SHIPPING—LIMITATION OF LIABILITY—OWNER'S PRIVITY OR KNOWLEDGE.
    In a proceeding under Rev. St. §§ 4283–4289, for the limitation of the liability of a corporation, owner of a steam vessel which has been damaged by the explosion of her boiler, privity or knowledge of a defective condition of the boiler is not to be imputed to the corporation unless the defects were apparent, and of such a character as to be detected by the inspection of an unskilled person, if the corporation has in good faith employed a competent person to inspect the boiler. Accordingly, *held*, that where a corporation owning a steam vessel had delegated to a competent and skilled marine engineer the duty of inspecting the boiler on such vessel, and supervising the repair thereof, it was entitled to limit its liability for damage resulting from an explosion of the boiler through a defect not apparent to an unskilled person, although there had been negligence on the part of some of its employés in the inspection or repair of the boiler.

2. SAME.
    If the government inspectors of steam vessels fail to discharge properly their duty of inspection of a vessel, privity or knowledge of defects which would have been revealed by a proper inspection is not to be imputed to a corporation owning the vessel, which has delegated the matter of the inspection of the vessel to a competent employé.

3. SAME—EVIDENCE.
    In a proceeding under Rev. St. § 4283, for the limitation of the liability of a shipowner, where it appears that such owner is a railroad corporation, having its home office a long distance from the place where the vessel was operated, it is not necessary to show by direct testimony that the principal officers of such corporation at such home office had no personal knowledge of the condition of such vessel, or of the steps taken to inspect and repair her.

4. SAME—REV. ST. § 4493—ACT JUNE 26, 1884.
    Rev. St. § 4493, making exceptions, in favor of passengers, from the rule of limitation of liability of a shipowner under Rev. St. §§ 4283–4289, is not repealed by Act June 26, 1884 (1 Supp. Rev. St. 440).

5. SAME—INSPECTION OF STEAM-VESSEL REPAIRS.
    It is as much the duty of an owner of a steamship, under Rev. St. § 4418, to cause an inspection of a boiler which has been repaired in a substantial part, as to cause an inspection of a new boiler, before using the same; and a failure to cause such inspection will render the owner of the vessel liable, under Rev. St. § 4493, to a passenger injured in consequence of the explosion of the boiler.

6. SAME.
    A failure to comply with the steamboat inspection law may be invoked to prove that a shipowner is not entitled to a limitation of liability under Rev. St. § 4283, though it is not set up in the pleadings of the parties to the proceeding for limitation.

Appeal from the District Court of the United States for the Southern Division of the District of Washington.

This was a petition by the Oregon Railway & Navigation Company, as owner, and the Oregon Short Line & Utah Northern Railway Company, as lessee, for limitation of liability in respect to

the damages caused by the explosion of the boiler of the steamboat Annie Faxon. The district court made a decree for limitation. 66 Fed. 575. Lewis T. Lawton and others, claimants, appealed.

Samuel A. Anderson and Charles H. Taylor, for appellants.

Cox. Cotton, Teal & Minor, for appellees.

Before McKENNA, GILBERT, and ROSS, Circuit Judges.

GILBERT, Circuit Judge. On August 14, 1893, the boiler of the steamer Annie Faxon exploded, while she was navigating the Snake river, in the state of Washington. The appellees, as owner and lessee, respectively, were at the time operating the steamer, as common carriers of freight and passengers. The appellants were the passengers and employés of the steamboat who were killed or injured by the explosion. On September 19, 1893, the appellees filed their petition in the court below for the purpose of obtaining a limitation of their liability under and by virtue of section 4283 of the Revised Statutes. The facts and circumstances on which the limitation of liability was claimed were set forth, and it was alleged that in or about the month of December, 1892, the boiler and engines of the steamer were tested and inspected by the United States inspectors of hulls and boilers, and by the officers, employés, and agents of the petitioners, and that at the time of such inspection the boiler and engine were found to be in good order and condition, and that the United States inspectors of hulls and boilers thereupon authorized the carrying of 135 pounds steam pressure; that at the time of the explosion the employés of the petitioners in charge of the boat were in the active, careful, and skillful performance of the duties required of them, and were exercising care and diligence for the safety of said boat, and of the persons and freight thereon; "that said accident and explosion happened, and the loss, damage, injury, and destruction above set forth were occasioned, done, and incurred without the fault, privity, or knowledge of your petitioners, or either of them, and without the fault, privity, or knowledge of any of its or their officers, agents, or servants, but were due solely to causes over which neither of your petitioners had any control of any kind whatsoever." Pursuant to the practice in such cases prescribed by admiralty rules 54 to 59, inclusive, an appraisement of the wreck of the steamer was had, fixing her value at $3,520; and a monition and citation were issued out of the district court, directing and requiring all persons claiming damages by reason of said explosion to present and file their respective claims therefor. Thereupon the appellants made answer to said petition, denying the facts which were therein alleged to limit the liability of the petitioners, and filed their respective proofs of claims. Upon the testimony and evidence taken upon the issues so raised, it was held that the petitioners were liable for the injuries, but that they were entitled to limit their liability to the value of the boat and her freight. From the final decree thereafter entered this appeal is taken.

The assignments of error challenge the findings of fact as well as the conclusions of law. It is contended by the appellants that the facts, as found, indicate personal negligence on the part of the appellees, in failing to have the boiler of the steamer properly tested and inspected, and by placing in the steamer a boiler that was insufficient in material and construction at the time it was placed there, and by continuing to use a boiler that was worn out, and obviously defective, for a long time prior to the explosion. It appears in the findings, and it is not disputed, that on December 12, 1892, the government inspectors of steam vessels made an inspection of the boiler, and, as the result thereof, issued to the appellees a certificate of inspection, authorizing the use of the boiler for one year, and allowing a steam pressure of 125 pounds per square inch. At the time of making the inspection the inspectors requested that, when the boat should be laid up during the winter, certain repairs should be made to the mud leg of the boiler. These repairs were made in June, 1893, and on the 4th of July the boat commenced running, and ran continuously until August 14, 1893, the date of the explosion. At the time of the inspection, one De Huff, a marine engineer in the employment of the appellees, accompanied the inspectors for the purpose of seeing what repairs they should require, if any. It appeared that De Huff was a competent marine engineer, and that he was licensed by the government. He testified that during the time the repairs were being made to the boiler in June, 1893, he visited the boat several times, to note the progress of the work, and to ascertain whether it was being done in accordance with his instructions. And he states that he was inside the fire box at that time, and examined its condition carefully, and that he then reported to Capt. Pegram, the port captain of the lessee company, then operating the boat, that it was necessary to put in a new mud ring. The repairs so recommended were made, and he thereupon reported to Capt. Pegram that the boat was in good order and condition, and ready for service. The negligence which rendered the petitioners liable to the extent of the value of the boat, as found by the trial court, consisted in the fact that some one in the service of the petitioners continued to use the boiler after the boiler iron had become old and brittle from crystallization; there being evidence that its defective condition was made apparent from the fact that the iron broke under the hammering at the time of making the repairs referred to, and in the further fact that no inspection was made of the new mud ring that was inserted in June, 1893.

The assignment of error principally relied upon is that the court held that privity or knowledge of the defective condition of the boiler, and of the fact that it was not inspected as required by law, either in December, 1892, or after the repairs of June, 1893, could not be imputed to the petitioners. We are unable to perceive how there can be imputation of privity or knowledge to a corporation of defects in one of its vessel's boilers, unless the defects were apparent, and of such a character as to be detected by

the inspection of an unskilled person. The record fails to show that the defects were of this character. The testimony fairly sustains the finding of the court that the defects in the boiler were not patent, and that they could have been discovered only by applying the proper test after the repairs of June, 1893. The test was not applied, and in that omission is one of the elements of the negligence of the petitioners, as found by the court. When we consider the purpose of the law which is under consideration, and the construction that has been given to it by the courts, it is obvious that the managers of a corporation whose business is the navigation of vessels are not required to have the skill and knowledge which are demanded of the inspector of a boiler. It is sufficient if the corporation employ, in good faith, a competent person to make such inspection. When it has employed such a person in good faith, and has delegated to him that branch of its duty, its liability beyond the value of the vessel and freight ceases, so far as concern injuries from defects of which it has no knowledge, and which are not apparent to the ordinary observer, but which require for their detection the skill of an expert. The petitioners not only deputed the general inspection of the vessel to a competent person, but they had caused the boiler to be inspected by the local inspectors in December, 1892; and they had in their possession at the time of the accident the certificate of the local inspectors, under which they were justified in using the vessel for a year from that date. But it is urged that this certificate is void, first, for the reason that at the time of the inspection the inspectors did not enter the boiler to examine its condition, but put on water pressure of 187 pounds, and depended solely upon the sounds that might be heard during the moment that the pressure was on, to determine the condition of the boiler. To this it may be said that if the local inspectors, who are public officers, failed to perform their duty, and made an insufficient examination of the vessel, the fault does not rest upon the petitioners, nor is there imputation to them of knowledge of such defective inspection, they having delegated the whole matter of the inspection of their vessels to a competent employé. But it is said that the certificate is void because its validity for another year depended upon repairs and alterations required and specified, and shortly to be made. We cannot see how there can be imputed to the petitioners, from any expression found in the certificate, notice of the danger of using the boat without further repairs. If the certificate had required the repairs to be made before a certain date, and the accident referred to had occurred prior to that date, there might be force in the argument; but there is no mention of repairs in the certificate, and before the accident the repairs called for by the inspectors were actually made, and it was reported to Capt. Pegram that they were made, and that the vessel was ready for use. The appellants rely upon expressions of the courts in Re Myers Excursion & Nav. Co., 57 Fed. 240, and Quinlan v. Pew, 5 C. C. A. 438, 56 Fed. 111. In Re Myers Excursion & Nav. Co., it was said:

"The barge was owned by a corporation. So it was the duty of this corpo-
ration, before dispatching this vessel upon the voyage in question, to know,
by the examination of some duly-appointed officer, whether the vessel was
in a seaworthy condition for the intended voyage. A proper examination
of the vessel surely would have disclosed the unsound condition."

In Quinlan v. Pew it is said:

"We therefore conclude that the word 'privity,' as found in this statute, in-
cludes at least as much as the word 'knowledge'; but we, of course, do not
overlook the fact that there is, in law, imputed knowledge, and therefore
there may be imputed privity."

In the Case of Myers Excursion & Nav. Co., the decision is
placed on the ground that it was the duty of the corporation, be-
fore sending the vessel on the voyage in question, to know, by the
examination of some proper officer, whether the vessel was fit for the
intended voyage. But the court did not hold, nor is it implied
in the decision, that, if a proper and competent officer had been
appointed by the corporation to make such examination, the knowl-
edge acquired by him would have been imputed to the company.
The same case was taken to the circuit court of appeals. 9 C. C.
A. 386, 61 Fed. 109. And in the opinion of that court it is stated
that the president of the corporation made the examination of the
vessel, and the court held that, in view of her condition as subse-
quently revealed, her defects were so obvious as that they could
not have escaped his observation if he had made a reasonably thor-
ough examination; and the court concluded, therefore, that such
examination was not made, and that such neglect on the part of
the president of the corporation constituted knowledge and privity
on the part of the corporation itself. In Quinlan v. Pew the injury
occurred by reason of a defect which was known to the master of
the vessel before she sailed from her home port, where the owners
resided. It was nevertheless held that the knowledge of the master,
who had been charged by the owners with the duty of repairing
the vessel, was not the knowledge of the owners, and that the
owner may delegate to another the duty of suitably fitting out his
ship, and thereby relieve himself from full liability, although such
agent may have been negligent. Said the court:

"We are also constrained to the belief that this statute, which the supreme
court directs shall be interpreted broadly, has regard for the usual necessi-
ties of the occupations of life, and, in that respect, intends that owners may
avail themselves of the proper facilities common to business men. and be
relieved, so far as it is concerned, whenever and so far as they have ap-
pointed a suitable representative, be he master, consignee, or other agent,
to supervise the ship, either at sea or at the home port, or otherwise, and
either for fitting her away, or navigating her after she is so fitted away."

These decisions accord with the views of the supreme court as
expressed in Walker v. Transportation Co., 3 Wall. 150; Butler v.
Steamship Co., 130 U. S. 527, 9 Sup. Ct. 612; Craig v. Insurance
Co., 141 U. S. 638, 12 Sup. Ct. 97. And we find nothing in the
holding of the trial court concerning the imputation of knowledge
or privity not in harmony therewith.

It is urged that the court erred in holding as a conclusion of law,

in effect, that the burden of proof was upon the claimants to prove that the petitioners had privity or knowledge of the defective condition of the boiler, and of the negligence of using the same; and it is contended that the court should have held that the burden of proof rested upon the petitioners to establish the fact alleged in their petition,—that the loss occurred without their knowledge or privity. This allegation is found in the petition, and is denied in the answers. Its truth, so far as concerned the managers, directors, or president of either of the petitioners, is not established by any direct evidence. There is not in the opinion of the trial court, nor in any ruling upon the trial, any holding that the burden of proof rested upon one or the other of the parties to the suit. It is assumed by the appellants that from the facts shown in evidence the court must have considered that the burden of proof was upon the claimants. It is only necessary for us to inquire, therefore, whether it is sufficiently shown that the negligence was without the knowledge or the privity of the petitioners. In determining this question, regard must be had to the method in which the petitioners conducted their business. They were railroad corporations,—the one the owner, the other the lessee of a line of railroad and steamboats; the one having its principal office or place of business in the city of Portland, in the state of Oregon, and the other having its principal place of business in the city of Cheyenne, in the state of Wyoming. It was manifestly impossible that the officers of these corporations, at their home offices, should have had personal knowledge of any of the transactions referred to in the evidence in this case. It was not necessary that they should have testified to such a want of knowledge. It is obvious from the nature of the business in which they were engaged that they were required to depute the duty of inspecting and looking after the boilers and hulls of their steamers to agents selected for that purpose. De Huff was a foreman in charge of the Snake river boats. He was a marine engineer, licensed by the United States, and a competent and skillful man. His immediate superior was Capt. Pegram, port captain of the company, whose office was in Portland, and who knew nothing about boilers. Both these officers were under R. W. Baxter, superintendent of the division, whose office was also at Portland. The evidence shows that De Huff reported to his immediate superior the facts concerning the condition of the vessel and her boiler, and it is evident from the testimony that the latter had no other knowledge upon the subject than that which he thus acquired, and that Baxter was not consulted or informed upon the subject. It is found in the opinion of the court as follows:

"It is not pretended that any managing officer of the petitioning corporations did have actual or personal knowledge of the defective condition of the boiler, or of the failure to inspect the same after the alterations were made."

We cannot say that there was error in this finding, or that in arriving at that conclusion the court was not guided by a proper view of the rules of evidence applicable to the testimony.

In behalf of the injured passengers, and the representatives of

those who were killed, it is assigned as error that the court construed the eighteenth section of the act of June 26, 1884 (23 Stat. 57), to repeal by implication section 4493 of the Revised Statutes, instead of holding that it was enacted simply as supplementary to sections 4283 to 4289, inclusive. Sections 4283 and 4493 stand together in the Revised Statutes, and provide for two distinct classes of liability,—the one prescribing the general rule that, for damage through negligent acts done without the privity or knowledge of the owner, liability should not exceed the amount or value of the interest of such owner in the vessel and her freight then pending; the other providing that for injury occurring through the neglect or failure of the owner to comply with the provisions of title 52 of the Revised Statutes for the regulation of steam vessels, or occurring through known defects or imperfections of the steering apparatus or of the hull, there should be, as to passengers, liability to the full amount of the damage. They are statutes in pari materia, —the one creating a general rule of limitation of liability, the other making exceptions in favor of passengers. Section 4493, as appears by its title as well as by its provisions, was intended to provide for better security of life on board steam vessels. In Sherlock v. Alling, 93 U. S. 99, a broad construction was given to that section; and it was held that under its provisions the master, the owner, and the vessel are liable for damages sustained by a passenger, arising through neglect to comply with the provisions expressed in title 52, no matter where the fault might lie. In Butler v. Steamship Co., 130 U. S. 527-553, 9 Sup. Ct. 612, Mr. Justice Bradley said of section 4493, after quoting its terms:

"This is only declaring in the particular case what is true in all,—that, if the injury or loss occurs through the fault of the owner, he will be personally liable, and cannot have the benefit of limited liability."

We are unable to concur with the ruling of the trial court that section 4493 of the Revised Statutes is repealed by the act of June 26, 1884, entitled "An act to remove certain burdens on the American merchant marine and encourage the American foreign carrying trade, and for other purposes." 1 Supp. Rev. St. (2d Ed.) 440. The eighteenth section of that act provides as follows:

"That the individual liability of a shipowner shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending. Provided that this provision shall not affect the liability of any owner, incurred previous to the passage of this act, nor prevent any claimant from joining all the owners in one action; nor shall the same apply to wages due to persons employed by said shipowners."

We fail to find in the language of the eighteenth section of the act of June 26, 1884, a purpose to repeal the provisions of any pre-existing statute. While its terms are vague, it would appear that the sole object of the act was to fix the liability of shipowners among themselves, and extend their right to limit their liability under the provisions of section 4283 to all cases of debt and liability under

contract obligations made on account of the ship, with the exception of wages due employés. In Chappell v. Bradshaw, 35 Fed. 923, the court construed it thus:

"There are no words in it which signify that it was intended to be a repealing statute. It appears to be another section, intended to take its place at the end of the act of 1851, as that act is given in the Revised Statutes. It is another section extending the exemption of shipowners to all or any debts and liabilities of the ship, except seamen's wages, and liabilities incurred before the passage of the act of 1884. Where a subsequent statute can be so construed as not to bring it in direct conflict with an antecedent law, it will not be held by the courts to repeal the former statute. Repeals by implication are seldom allowed, and to do so in this instance would be to do violence to the intention of congress, which appears clearly to have been to extend the act of 1851 to exempt shipowners from liabilities not embraced in that act."

In Gokey v. Fort, 44 Fed. 364, Brown, J., said:

"I think the act of 1884 is doubtless to be treated as in pari materia with the act of 1851 (Rev. St. §§ 4233–4285), and designed to extend the act of 1851 to cases of the master's acts or contracts, and thus to bring our law into harmony with the general maritime law on this subject."

Having reached the conclusion that section 4493 remains in full force and effect notwithstanding the subsequent enactment of 1884, the question arises in the present case whether a liability has been incurred under its provisions. The trial court found as follows:

"After giving the testimony full consideration, I find that the boiler was made of iron, and it had been in use many years. It had been cracked and blistered in several places, and had been patched a number of times. In June preceding the explosion, one of the important sheets of the boiler, known as the 'mud ring,' was replaced by a new one, and some patching was done. In making these last repairs the old iron was broken by hammering, showing that it had become brittle from crystallization. I conclude, therefore, that the explosion occurred because the boiler was defective, and that there was negligence on the part of some one in the service of the libelants, in continuing the use of a boiler so old as the one in question, and without having it properly tested and inspected after the last repairs were made. Section 4418, Rev. St., requires that the boiler of every steam vessel shall be inspected by the local inspector, before being used. Manifestly, to comply with this law according to the intent thereof, every sheet of which a boiler is composed must be inspected, and subjected to the prescribed test. And the law was violated by using the boiler after the new mud ring had been put in without an official inspection. Posey v. Scoville, 10 Fed. 140."

There is in the record, it is true, no distinct or positive evidence that the failure to inspect the boiler after the repairs of June, 1883, was the cause of the explosion, or that an inspection at that time would necessarily have disclosed the imperfections, and the weakness which resulted in the accident. It can only be said that if a proper inspection had been made at that time the weakness of the boiler would probably have been detected. As we construe the statute, it was as much the duty of the owner of the steamship to cause an inspection of a boiler that had been repaired in a substantial part, as it was to cause an inspection of a new boiler, before using the same. The repaired boiler was, to all intent, a new boiler. If, in this case, the explosion had been of a new boiler that had never been used, it could scarcely be contended, we think, that the owner would not be liable for the full extent of the injuries to the pas-

sengers under the provisions of section 4493. That section was intended for the better protection of the life of passengers, and, if it be not given the construction which we have placed upon it, its purpose will not be accomplished. Probably it could never be proven in any given case of explosion that the accident occurred through a failure to inspect the boiler. There would be little or no protection in holding that, after an explosion, an injured passenger, in order to recover under section 4493, must prove that, notwithstanding the absolute failure to comply with the inspection law, there were in the boiler defects that would necessarily have been detected if an inspection had been made before using the same. We are unable to find that a construction has been placed upon this statute by any court. In Butler v. Steamship Co., on page 553, 130 U. S., and page 618, 9 Sup. Ct., Mr. Justice Bradley said:

"Perhaps, if it should appear that the requirements of the steamboat inspection law were not complied with by him, he would not obtain a decree for limited liability. That is all. We say 'perhaps,' for it has never yet been decided, at least by this court, that the owner cannot claim the benefit of limited liability when a disaster happens to a coastwise steamer without his fault, privity, or knowledge, even though some of the requirements of the steamboat inspection law may not have been complied with."

The construction which we have given to the statute seems to us just and reasonable, and consonant with the purposes for which the law was made. It is true that in the pleadings no reference is made to the failure of the railway company to inspect the boiler after it was repaired, and no ground of liability is charged against the company, under the provisions of section 4493, by any of the injured passengers, or their representatives. On the contrary, they all seek to recover on the ground of the negligence of the company in continuing the use of a boiler known to be old and defective. But we do not regard these facts as material. The failure to comply with the inspection law may, in our judgment, be invoked to prove that the owner is not entitled to the benefit of the limitation of liability law, as claimed in the libel and petition. As to Lewis T. Lawton, Daniel H. Bechtol, Mary A. McIntosh, administratrix of the estate of John McIntosh, deceased, and Susan E. McIntosh, widow and heir at law of Thomas McIntosh, deceased, the decree is reversed, at the appellees' cost, and the cause is remanded for further proceedings in the court below not in conflict with this opinion. As to the other appellants the decree is affirmed, with costs to the appellees.