### BRAKER et al. v. F. W. JARVIS CO.

(District Court, S. D. New York. October 28, 1908.)

SHIPPING (§§ 132, 141*)—DAMAGE TO CARGO—EVIDENCE—LIMITING LIABILITY.

*Held*, that the damage occurred from the unseaworthiness of the carrying barge and not from a collision that she was subjected to through the rough condition of the water. Also *held* that the owner was not entitled to limit its liability, as the unseaworthiness, was due to a negligent examination of the vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 493; Dec. Dig. §§ 132, 141.*]

(Syllabus by the Court.)

Kneeland & Harrison, for libellants.
Almet Reed Latson and Ward W. Pickard, for respondent.

ADAMS, District Judge. This action was brought by Henry J. Braker & Brother against the F. W. Jarvis Company to recover the damage suffered through the sinking of the barge Helen McLeod on the 20th of December, 1906, at pier 49, North River. There were loaded on the barge at the said pier 529 bags of Castor Seed belonging to the libellants, and during the night, or the ensuing morning, the barge filled and sank, causing a loss of 488 bags of the said cargo, of the claimed value of $3320.34. The respondent was under a contract with the libellants to transport 2938 bags of Castor Seed of which the lost bags constituted a part. The respondent defends on the ground that an unknown passenger steamboat passed near the pier at a high and dangerous rate of speed, causing heavy and extraordinary swells which pounded the barge against the pier with great force and soon thereafter it was discovered that the barge was leaking and notwithstanding proper efforts made to keep her afloat, she sank and caused some loss. It is alleged that the barge was seaworthy, but if there was any loss the respondent was entitled to limit its liability to $600, the value of the barge. On the trial, the respondent was permitted to amend its answer so as to allege, that the cargo was insured by libellants and it was agreed between the libellants and the respondent that in case of loss respondent should be absolved from all liability therefor. No testimony was presented, however, to establish the claim covered by the amendment and the questions presented are: (1) Was the barge seaworthy and (2) if not, was the respondent entitled to limit its liability?

The testimony showed that the barge was formerly a schooner about 70 feet long. Her exact age did not appear but it was shown that she was built prior to 1850, so that she was nearly 60 years old at the time of the loss. The respondent had owned her 15 or 16 years. She ordi-

---

narily carried about 100 tons. On this occasion, she was not heavily loaded; the cargo was rather less than the weight she usually carried.

It was sought to prove the seaworthiness of the barge by the testimony of several witnesses who stated that they considered her seaworthy for harbor work. She sank at her dock, however, which creates a presumption of unseaworthiness, in the absence of some cause of sinking. To overcome the presumption arising from the sinking, it was attempted to show that she received a severe blow from the effect of some commotion in the water, caused by a passing vessel, but the examination of the only man on board proved that the bump which she received was not unusual; that she had received a good many bumps of the same kind before without injury; that she was then light, higher out of the water than on this occasion and striking did no injury and the harm came this time because she was deeply loaded; he would not testify that there was anything unusual about the blow she received this time. Other boats lying in the slip were subjected to whatever commotion of the water there was without injury.

It appeared that in March, 1905, about $1,000 were expended on the boat in repairs and that thereafter some slight repairs were made. She was, however, not in a condition to be made seaworthy by such expenditures; she was hogged, her butts and seams were exceptionally large and the butts were open. Around the stern they had been covered with sheet iron, indicating that the wood was so bad the plank ends would not hold the fastenings. Spikes were protruding and the boat generally was weak and unfit for the transportation of dry and perishable cargoes. These facts, in connection with the age and condition of the barge, were quite sufficient to account for the sinking and consequent damage to the cargo in this case. Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012; Forbes v. Merchants' Ex. & Trans. Co. (D. C.) 111 Fed. 796.

It is immaterial that the respondent was a private rather than a common carrier. Notwithstanding such fact, the obligation to furnish a seaworthy vessel remained.

The remaining question is as to the right of the respondent to limit its liability to the value of the boat. It is well settled that the owner of a vessel is not entitled to limit his liability arising from the unseaworthiness of a vessel. If the libellant was ignorant of the condition of the vessel, it was because of a negligent examination, as in The Republic, 61 Fed. 109, 9 C. C. A. 386.

It follows that there should be a decree for the libellants, with an order of reference.