## THE ANNIE.

### Petition of PEOPLE'S NAV. CO., Inc.

#### (District Court, E. D. Virginia. December 15, 1919.)

SHIPPING ☞208—OWNER OF STEAMBOAT NOT ENTITLED TO LIMITATION OF LIABILITY.

Owner of a small steamer employed in carrying passengers and cargo *held* not entitled to limitation of liability for loss of life and property resulting from explosion of her boiler, on the ground that the condition of boiler and furnace was known to be unsafe, and that repairs were made thereon without previous notice or subsequent inspection required by statute and inspector's regulations.

In Admiralty. On petition of the People's Navigation Company, Incorporated, owner of the steamer Annie, for limitation of liability. Petition denied.

Edward R. Baird, Jr., and R. Clarence Dozier, both of Norfolk, Va., for petitioner.

Hughes, Little & Seawell, of Norfolk, Va., and A. F. Aydlett, of Elizabeth City, N. C., for cargo owners.

Herman Sachs, S. M. Brandt, and John W. Oast, Jr., all of Norfolk, Va., for death claims.

WADDILL, District Judge. The petition in this case was filed on behalf of the People's Navigation Company, Incorporated, to secure a limitation of its liability as owner of the steamer Annie from losses arising by the explosion on and destruction of the steamer at a wharf in Elizabeth City, N. C., on the morning of April 5, 1918. The facts in connection with the ownership and operation of the vessel are briefly these:

The People's Navigation Company, a corporation duly organized under the laws of the state of Virginia, owned the steamer Annie, a small single screw wooden freight and passenger steamer, 72 tons gross, 97 feet long, 23 feet 6 inches beam, and 6 feet 5 inches deep, and at the time of the disaster in question was engaged in operating her between the ports of Norfolk, Va., and Elizabeth City, N. C., through the Chesapeake & Albemarle Canal, making triweekly trips between the two cities. On the evening of the 4th of April, 1918, the Annie left Norfolk laden with a cargo of general merchandise, bound for Elizabeth City, where she arrived between 5 and 6 o'clock the next morning. About 8 o'clock of that morning, she was moved to the dock of W. J. Woodley, and while there, about 8:45 a. m., an explosion of great violence occurred on the steamer, whereby she was totally wrecked and destroyed, her boiler blown out of her, and a great part of the cargo destroyed, and the remainder badly injured and damaged. Five of the crew of the vessel, to wit, James Dowdy, assistant engineer, William Kinsey, second officer, Freeman Coleman, fireman, and Fred Robinson and George Smith, deck hands, and Anderson Morris, a bystander on the dock, lost their lives.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shortly after the occurrence, to wit, on the 15th of April, 1918, the petition in this case was filed, setting forth the circumstances of the accident, and asking on behalf of the petitioner that its liability arising for and on account of the same be limited, pursuant to the statute providing for such relief in proper cases, and that the prosecution of all other suits growing out of said disaster be enjoined and restrained. Persons who had sustained losses, either in person or property, duly appeared in these proceedings, and the case is now before the court, having regularly matured, on the report of the special master as to the persons in interest and upon proofs taken on the merits of the case.

The essential facts regarding the ownership of the vessel, the happening of this disaster, and the losses sustained, both in life and property, are not seriously disputed, and the case turns almost entirely upon whether or not the petitioner is entitled to the limitation of its liability upon the facts as proved; in other words, was the vessel seaworthy at the time of the accident, or was her condition such, with the privity and knowledge of her owner, as to disentitle the petitioner to claim the benefit of limitation of liability under the laws of the United States?

Considerable testimony has been taken bearing on the accident, and the same is not free from conflict in some of its important aspects. The Annie was about 14 years old, and had had her last annual inspection about 11 months previous to the explosion, and some one of her intermediate, or 4 months, examinations, which is rather a superficial affair as compared with the annual inspection, had been made. At and about the time of the annual inspection in May, 1917, 41 staybolts were required to be put in the boiler, and at that time there was a crack of some 6 or 7 inches on the port side of the furnace, which was subsequently welded together. Later, some 50 other staybolts were put in, and some 13 were placed on the Sunday preceding the accident. The testimony showed that repairs to the boiler were made certainly four times during the 11 months subsequent to the annual inspection, and that on two or more occasions work was done at night and on Sundays at Elizabeth City, with such labor as could be procured for the purpose. It also further showed that this work was not infrequently crudely done, and no proper or efficient test, hydrostatic or otherwise, made of the sufficiency of the same after it was done.

On the morning of the disaster, while tied to the dock, the boiler was leaking badly, as testified to by the fireman, who moved the steamer from her first landing to the dock where the accident happened, and one of petitioner's witnesses who worked on the vessel the Sunday before, a boiler maker and blacksmith, testified that on the completion of the work, upon being asked by the chief engineer about the condition of the boiler, replied, "It is all O. K. until it gives out again." It is true that the government inspectors, as far as they testified, tended to maintain the seaworthiness of the vessel; but a careful examination of their testimony will show that much of what they said and did was merely perfunctory, and that really the steamer was allowed by its owners to be used in a knowingly unsafe and dangerous condition.

The owners of the vessel make no claim to have complied with the rules and regulations of the Board of Steamboat Inspectors, imposing

the obligation upon owners of vessels not to make repairs or alterations to a steamer, affecting its safety, without notice. Subsection 5 of rule 6 of the General Rules and Regulations prescribed by the Board of Supervising Inspectors, Edition of November 21, 1916, p. 156, issued pursuant to section 4417 of the Revised Statutes (Comp. St. § 8172), is as follows:

"* * * No repairs or alterations affecting the safety of the vessel, either in regard to hull or machinery, shall be made without the knowledge of the local inspectors. Notice of such repairs and changes is necessary, even if such work does not require the vessel to be placed in a dry dock, and even if there are no licensed officers attached to the vessel. Section 4417, R. S."

The repairs made as indicated on this vessel, sometimes at Norfolk, and sometimes at night and on Sundays at Elizabeth City, were of a character that affected the safety of the vessel in the highest degree, and consisted of welding cracks in the furnace, and removal of and substitution of staybolts in and about the fire box, and such like services, which, if not properly and efficiently performed, would inevitably bring about the accident which happened in this case. Nor does the petitioner claim to have caused proper inspection to be made of the boiler and furnace, after the making of important repairs, before using the steamer. Act Cong. June 26, 1884, c. 121, 23 Stat. 53 (1 Supp. R. S. § 440; Rev. Stat. § 4418 [Comp. St. § 8173]); The Annie Faxon, 75 Fed. 312, 319, 21 C. C. A. 366; Braker v. Jarvis & Co. (D. C.) 166 Fed. 987.

The court's conclusion, upon full consideration of the entire testimony, and having regard to the burden of proof properly resting upon the petitioner in such cases (In re Davidson Steamship Co. [D. C.] 133 Fed. 411; McGill v. Michigan S. S. Co., 144 Fed. 788, 75 C. C. A. 518; refused 203 U. S. 593, 27 Sup. Ct. 782, 51 L. Ed. 332; The Murrell [D. C.] 188 Fed. 727; In re P. Sanford Ross, 204 Fed. 248), is that the boiler and firebox of the Annie were not in such safe and suitable condition as to warrant their use and service in the business in which she was engaged, having regard to the safety of the lives and property of those likely to be endangered thereby, and, on the contrary, the same were in an unseaworthy condition prior to and at the time of the accident, with the privity and knowledge and full opportunity of knowledge on the part of the owners of the steamer's unfit condition, which resulted in the explosion, and the disaster that followed, and hence that the claim of the People's Navigation Company to a limitation of liability should be denied.

Counsel for the petitioner suggest that the force of the explosion, and the results thereof, was greater than would have arisen from an ordinary boiler explosion, and suggested that the same occurred by reason of dynamite or other high explosive having gotten in the coal bunker of the vessel. This theory is not supported, in the court's view, by any tangible evidence, nor is there anything in the suggestion that the explosion might not have resulted as disastrously as this did. Perhaps this may have been an unusual force, but the causes were likewise a defective boiler, fires banked, and water running into the fire box, which most probably would have resulted just as this one did.

The suggestion is strongly urged in behalf of certain cargo owners,

who lost heavily as a result of the explosion, that no limitation of liability should be allowed the petitioner, particularly as against those claims, because the petitioner undertook to carry cargo insurance for their benefit, and without which they would not have shipped by its line. It may be conceded as a matter of law that this position is well taken, if the facts warranted the assertion of the claim. Laverty et al. v. Clausen (D. C.) 40 Fed. 542; Great Lakes Towing Co. v. Mill Transportation Co., 155 Fed. 11, 17, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769. But, in this case, at most only nominal insurance, as compared with the losses sustained, was taken out, which had elapsed some six months prior to the disaster; and while, undoubtedly, considerable talk was had respecting the having and taking out of cargo insurance for the benefit of shippers at the time the shippers in question commenced to use the line, still there never was any positive agreement or meeting of minds of the parties on the subject, such as would warrant the court in holding that a contract to carry insurance was actually made.

A decree will be entered, upon presentation, in favor of the intervening petitioners and claimants, for the amounts respectively due them, on the same being ascertained, and holding that the petitioner, the owner of the steamer Annie, is not entitled to the limitation of liability prayed for.