## THE NEW YORK MARINE NO. 10.
## THE C. F. COUGHLIN.

### In re LIGHTERAGE HOLDINGS, Inc.

#### No. 233.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1940.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for appellants-petitioners.

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for appellant McNall.

Otto & Easterday, of New York City (Henry E. Otto and Samuel C. Otto, both of New York City, of counsel), for appellee Murphy.

Purdy, Mason & Lamb, of New York City (John E. Purdy, of New York City, of counsel), for appellee Weightman.

Edmond B. Butler, of New York City, for appellee General Chemical Co.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

■ This litigation is the outgrowth of a collision on the Barge Canal near Tonawanda, N. Y., on September 11, 1937, between a barge in the tow of the tug New York Marine No. 10 and a barge in the tow of the tug C. F. Coughlin. The district judge in an admirably clear opinion found the tug No. 10 solely at fault. We are asked by one appellant, McNall, to charge both tugs with fault. The other appellants, owner and charterer of No. 10, assert that the sole fault lies with the Coughlin. These contentions raise only questions of fact which the district judge resolved in favor of the Coughlin, with ample evidence in the record to support his findings. It would serve no useful purpose to restate the evidence in detail. The appellants argue that the Coughlin violated section 179 of the New York Canal Law which requires a westbound tow approaching "any place in a canal less than thirty feet wide upon the surface, or which will not safely permit its passing another float approaching the same place" to stop and wait for the eastbound tow to pass at a place of safety. As Judge Coxe found, the passing was not at the bend but in the straightaway stretch east of it. The Coughlin's bow was 50 or 60 feet east of red light No. 339.2 and this light was a considerable distance east of the bend—one witness said a quarter of a mile. There was sufficient room in the straightaway for passage, had not the head barge in No. 10's tow taken a sheer after making the bend. If the statute applied to the bend despite the width of the canal at that point, there was no breach of the statutory duty by the Coughlin.

■ The remaining point is whether the charterer of No. 10 was properly denied limitation of liability. Opposition to the granting of limitation was based on the contentions that the tug was insufficiently and incompetently manned. The district judge found that only one of the two deckhands was on board at the time of the collision and he (Costello) was incompetent; that his incompetence was a contributing cause of the collision, and that the charterer was chargeable with knowledge of his incompetence, because Carine, dispatcher and hirer of crews for tugs of the charterer in New York, as well as Tucker, who had similar duties in Buffalo, knew that Costello was a member of the crew. Costello was only 19 years old and prior to shipping as deckhand on the No. 10 had had no experience on tugs. It may be noted, however, that he was not wholly without experience in navigation on the canal; he had had plenty of experience in handling lines on canal boats and had been serving as deckhand on the tug for more than a month prior to the collision. If the finding that the dispatchers "knew that he was a member of the crew" be construed as a finding that they knew Costello was inexperienced, we do not think that the dispatchers are thereby shown at fault. The duties of a deckhand on a tug do not require a high degree of skill. No license is required, nor is any period of apprenticeship customary, so far as we are informed. Green men must be instructed in their duties by the master of the tug, but we do not think the operating company is ipso facto culpable for hiring a green deckhand. An able-bodied young man of 19, much of whose life has been spent on canal boats, should presumptively be competent to perform the duties of a deckhand if instructed by the tug master. The master of the No. 10 did not give Costello any instructions, although he knew that this was his first job on a tug. Hence the deckhand's failure to stand by the hawsers when the tow was rounding a bend would seem to be a fault chargeable to the master's failure to give instructions rather than to the dispatcher's knowledge of the employment of a green hand. Denial of limitation cannot be sustained on the ground of Costello's incompetence based only on his inexperience.

■ But there was also a finding that the tug was undermanned at the time of collision. There was testimony by Gooley and Costello that the second deckhand, Ingleston, did not join the tug until several days later, at Baldwinsville. Although

Judge Coxe made no finding that this fact was known to any managerial agent of the charterer, there is testimony by Costello that he heard the tug master tell Tucker, the charterer's Buffalo agent, on the dock that there was no other deckhand than Costello. The tug master did not expressly deny this conversation but he did testify that Tucker was not on the dock when the tow set out from Buffalo. Tucker denied that the tug captain had notified him of the crew shortage, but his testimony is rendered most doubtful by the admission that he sent a telegram to Shephard to join the No. 10 at Buffalo as a deckhand, and did not know whether Shephard went on the tug or on a salt boat. We think the record requires a finding that Tucker knew that the tug left Buffalo short one deckhand. Being a managerial agent of the charterer Tucker's privity or knowledge is chargeable to it and deprives it of the privilege of limitation; it has not disproved its privity, which it must do to limit liability. The Rambler, 2 Cir., 290 F. 791, 792; The 84-H, 2 Cir., 296 F. 427, 432; Southern Pacific Co. v. United States, 2 Cir., 72 F.2d 212, 214. The charterer is therefore in the same position as if it had no privilege of limitation, and is liable in full if it is held that the absence of a second deckhand was a cause of the accident. Since the absence has been found, and the lack is admitted to be a statutory fault, (see 46 U.S.C.A. §§ 222, 362 and 405) it is presumed that the fault is a contributory cause, and the petitioner must bear the burden of showing that it was not. The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148; The Albert Dumois, 177 U.S. 240, 254, 20 S.Ct. 595, 44 L.Ed. 751; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 298, 37 S.Ct. 270, 61 L.Ed. 726; The Annie Faxon, 9 Cir., 75 F. 312, 319; McGill v. Michigan S. S. Co., 9 Cir., 144 F. 788, 795, certiorari denied, 203 U.S. 593, 27 S.Ct. 782, 51 L.Ed. 332; The Suffolk, 2 Cir., 258 F. 219; The Fulton, 2 Cir., 54 F. 2d 467, 469; The Annie, D.C., 261 F. 797, 799. This burden it has not met, for it is impossible to say that the other deckhand might not have been on duty instead of Costello on the morning of the collision, had there been two deckhands on board. On the ground that the tug was undermanned, that the charterer was privy to the undermanning, and that this fault may have been a contributing cause of the collision, the denial of limitation to the operating charterer is sustained.

Decrees affirmed.