### In re MYERS EXCURSION & NAVIGATION CO.

(District Court, E. D. New York. July 7, 1893.)

1. SHIPPING—LIMITATION OF LIABILITY—EXCURSION BARGE.

A barge without motive power, which is used for transporting excursion parties on New York harbor and adjacent waters, is within the limited liability acts of the United States.

2. SAME—BARGE WITHOUT MOTIVE POWER — MAY BE SURRENDERED WITHOUT TUG.

A barge without motive power, which is used for carrying excursion parties about New York harbor and adjacent waters, may be surrendered by her owners, under the limited liability acts of the United States, without the surrender of the tug towing the barge at the time of the loss, though the tug belongs to the same owners.

3. SAME—UNSEAWORTHINESS — CAPACITY TO WITHSTAND STORMS OF ORDINARY VIOLENCE.

A barge used to carry excursion parties on New York harbor and neighboring waters is unseaworthy when not in a condition to withstand without serious injury to her passengers the violent thunderstorms which are of frequent occurrence in that locality.

4. SAME—OWNERS CHARGED WITH KNOWLEDGE—LIMITATION OF LIABILITY.

Where the unseaworthy condition of an excursion barge would be shown by a proper examination, her owners are charged with knowledge thereof, and any injury to passengers resulting therefrom is not without the "privity or knowledge" of the owners so as to entitle them to the benefit of the limited liability acts of the United States.

In Admiralty. In the matter of the petition of the Myers Excursion & Navigation Company for limitation of liability as owners of the barge Republic. Petition dismissed.

Wing, Shoudy & Putnam, for petitioner.

Raphael J. Moses, Jr., Fernando Solinger, and George W. Cottrell, for respondents.

BENEDICT, District Judge.  The barge Republic was hired, under an excursion contract made on March 2, 1891, to convey an excursion party to Cold Spring grove and back to New York on August 12, 1891, for the sum of $260.  The barge, in pursuance of that contract, on that day took on board the excursion party, and was towed to Cold Spring grove by the steamboat Crystal Stream, owned by the same owners.  Early in the afternoon the barge reached a wharf on the east side of the harbor at Cold Spring grove, where she was made fast to the end of the wharf, the port side of the barge being next to the wharf, and the Crystal Stream being fast to her upon her starboard side.  Just as the barge was about to leave the wharf on the return trip, the excursionists being on board, but the lines not cast off, a thunderstorm came up from the westward, striking the barge on her starboard side.  By the force of the wind, the roof of the hurricane deck on the starboard side was raised off its fastenings and doubled over against the two masts of the barge and the pilot house.  The pilot house turned over, the two masts broke, and these masts, together with the broken portion of the hurricane deck, fell upon the other side of the hurricane deck, which was thereby crushed down upon the passengers collected underneath it, and 13 of the passengers were in this way killed.  The owners of the barge, being sued for the injury to these passengers, filed their petition in this court to have their liability limited, and surrendered the barge to the custody of the court.  In their petition they set up that the injuries to the passengers alluded to were not caused by any negligence on the part of those owning or in charge of the Republic, but to unavoidable accident.

The following objections are raised to the granting of the relief prayed by the petitioners:

First.  That the Republic was not a vessel intended to be embraced in the limited liability acts.  In my opinion, this objection is not well founded.  As I understand the limited liability acts, they were intended to relieve from liability barges engaged in any kind of navigation, and they cover the barge in question.

The next objection taken is that the tug Crystal Stream, being the motive power of the barge Republic, should also have been surrendered.  This objection is without foundation.  The petitioners do not seek to limit any liability they may be under as owners of the Crystal Stream, and there is nothing in this proceeding to prevent the parties injured from proceeding against the Crystal Stream or her owners, if so advised.

The third objection is that the Republic was unfit for the employment in which she was engaged, and that the injuries sustained by her passengers were due to her unseaworthy condition.  Upon this question a mass of testimony has been taken, both in regard to the force of the wind and the construction and condition of the barge.  After a careful consideration of the testimony relating to the effects of the wind on other objects near the place where the barge was when struck by the wind, and the evidence tending

to show that the hurricane deck was not properly fastened to the stanchions and deck below, and the evidence in regard to the condition of the masts which fell, and which are clearly proved to have been unsound, and in regard to the condition of the stanchions, and the method of fastening the deck to them,—the effect of which testimony does not seem to be overthrown by the testimony upon these points produced in behalf of the petitioners,—my conclusion is that the objection under consideration is well taken. Undoubtedly the law requires that a barge engaged in the occupation of carrying excursion parties around and about the harbor of New York shall be sufficient to endure without serious injury—certainly without such injury as was done to the hurricane deck of this barge—any wind that may be naturally anticipated in the course of such a voyage. It is conceded on all hands that the accident in question was not caused by any fault in navigating or mooring the barge. It was entirely due to the wind that struck the hurricane deck. Violent thunder storms are frequent in and about this harbor. Wind of great force is to be anticipated in this navigation; and in my opinion the wind that struck the barge on the occasion in question was no greater than is to be anticipated in this locality. No doubt there are winds that nothing can withstand, and against which the owners of such vessels cannot be expected to be prepared; but my conclusion is that the wind that struck this barge, while violent, did not exceed in violence any that might be reasonably expected in these waters. A vessel not strong enough to endure in safety such a wind as this barge encountered is, in my opinion, unseaworthy, and the injuries done to her passengers must be held to have arisen from the unfit and unseaworthy condition of the barge.

But the limited liability statutes of the United States exempt the owners of the barge from liability beyond the value of the barge and her freight then pending for loss and damage resulting as above stated, provided such loss occurred "without the privity or knowledge of the owners;" and the question arises whether loss and injury resulting from the unfit condition of the barge at the time she started upon the voyage in question occurred without the privity or knowledge of her owners, within the meaning of these statutes. The barge was owned by a corporation, so it was the duty of this corporation, before dispatching the vessel upon the voyage in question, to know by the examination of some duly-appointed officer whether the vessel was in a fit and seaworthy condition for the intended voyage. A proper examination of the vessel surely would have disclosed the unsound condition of the masts, which, by falling under the weight of the portion of the hurricane deck, which first gave way, largely contributed to the loss of life that ensued. Such an examination would have disclosed the fact that the fastenings of the hurricane deck were insufficient. The petitioners cannot, therefore, be held to be ignorant of what such an examination would have disclosed. They are chargeable with knowledge of what they might have known, and what they were

bound to know, because of their obligation to provide a vessel fit for the employment to which it is put. An owner of a ship cannot be permitted to free himself from an obligation of this character by remaining in ignorance of what it was within his power to know.

My decision, therefore, is that the petition must be dismissed, and the injunction dissolved.