## In re THE ANNIE FAXON.

(District Court, D. Washington, S. D. February 18, 1895.)

1. SHIPPING—LIMITATION OF LIABILITY—PLEADING AND PRACTICE.

Under a petition for limitation of liability the petitioners are entitled, under admiralty rule 56, to litigate the question of the existence of any liability whatever, and therefore do not plead themselves out of court by denying any negligence, either of themselves or of any of their agents or employés. The Benefactor, 103 U. S. 239, and Providence & N. Y. S. S. Co. v. Hill Manuf'g Co., 3 Sup. Ct. 379, 617, 109 U. S. 578, followed.

2. SAME—STEAM-BOILER INSPECTION.

It is the intention of the inspection law (Rev. St. § 4418) that every sheet of which a boiler is composed must be inspected, and subjected to the prescribed test; and it is therefore a violation of the law to use, without official inspection, an old boiler, in which a new mud ring has been placed.

3. SAME—PERSONAL INJURIES FROM EXPLODING BOILER.

The limited liability law (Rev. St. § 4283), taken in connection with the act of June 26, 1884, and especially section 18 thereof (1 Supp. Rev. St. [2d Ed.] 440), which is the latest expression of the legislative will on the subject, operates to relieve owners of steam vessels from liability for injuries to passengers occasioned by explosion of the boilers, although the inspection laws have been violated, when such violation is without their personal knowledge or privity; and this notwithstanding the provisions of Rev. St. § 4493, declaring owners to be responsible for damage to passengers or baggage through violation of the inspection laws, or through known defects in the steaming apparatus.

This was a petition by the Oregon Railway & Navigation Company, as owner, and the Oregon Short Line & Utah Northern Railway Company, as lessee, for limitation of liability in respect to damages caused by explosion of the boiler of the steamboat Annie Faxon.

W. W. Cotton, for libelants.

Charles H. Tayloy, for claimants.

HANFORD, District Judge. The steamboat Annie Faxon, owned by the Oregon Railway & Navigation Company, and operated under a lease of the transportation lines owned by said company to the Oregon Short Line & Utah Northern Railway Company, was, prior to the explosion and wreck hereinafter described, employed as a carrier of passengers and freight on Snake river, between Riparia, in the state of Washington, and Lewiston, in the state of Idaho. Said steamboat was inspected by the United States local inspectors of steam vessels December 12, 1892, and then granted a certificate of inspection, and licensed to navigate said river; the maximum steam pressure allowed being 125 pounds to the square inch. In June, 1893, the mud ring of the boiler in said steamer was removed, and replaced by a new one, and other repairs were made. Said boiler was not, after the completion of said repairs and alterations, inspected by the United States inspectors, nor sub-

jected to any sufficient test for determining whether it was safe and fit for use. On August 14, 1893, while the steamer was going down stream, having on board freight and several passengers, with a pressure of steam upon said boiler of 110 pounds, with her safety valve set to blow off at 125 pounds, said boiler exploded, thereby wrecking the boat. As a result of said explosion 8 persons were killed and 15 were injured. Among those killed were two passengers named John Mackintosh and Thomas Mackintosh, and among the persons injured were two other passengers named Lewis T. Lawton and Daniel H. Bechtol. The Oregon Railway & Navigation Company, as owner, and the Oregon Short Line & Utah Northern Railway Company, as lessee, petitioned this court, as a court of admiralty, to adjudicate as to their liability for the damages resulting from said explosion. Thereupon the court made an order for the appraisement of the vessel and freight pending, and requiring all persons claiming damages for any loss or injury occasioned by said explosion to come before the court, and submit proof of their respective claims, and forbidding the prosecution by such persons of any suit or action for the recovery of damages for injuries so occasioned until the final determination of the rights of said petitioners in this cause. An appraisement has been made, and the value of the wreck and pending freight found to be $3,520. Several persons have appeared and made proof of their claims as required by the citation and monition issued pursuant to said order of the court, and the claimants have made separate answers to said petition. Among the claimants who have so appeared and answered are the said injured passengers, Lewis T. Lawton and Daniel H. Bechtol, and Mary A. Mackintosh, widow of said John Mackintosh, deceased, and administratrix of his estate, and Susan E. Mackintosh, widow of said Thomas Mackintosh, deceased, and administratrix of his estate. Each of said claimants alleges personal injury caused by said explosion, for which they seek to obtain damages. They each charge that the injuries complained of were caused by negligence on the part of the petitioners, their servants and agents, and they contest the right of the petitioners to have the benefit of the limited liability act aforesaid.

The case has been conducted by able counsel on both sides, and sharply contested. The testimony is full and minute, and all the facts have been disclosed which can be ascertained from the surviving witnesses. I have given it all careful consideration, but the conclusion I have reached renders it unnecessary for me to make any extended recital of the facts. Rev. St. § 4283, limits the liability of owners of vessels for any embezzlement, loss, or destruction, by any person, of any property or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of such owner or owners, so that the same shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. Taking advantage of the permission accorded by the fifty-sixth admiralty rule promulgated

by the supreme court, the libelants have, while claiming the benefit of the law limiting the liability of shipowners, also denied all negligence on the part of their agents and employés, as well as themselves, whereby any responsibility should attach to them, or the vessel, the cargo, or the pending freight should be at all chargeable; and they pray the court to pronounce in their favor, that the vessel and owners are entirely exempt from liability. Preliminary to the hearing on the merits, the claimants moved to dismiss the proceedings, on the ground that, by alleging that their agents and servants were entirely free from fault, the libelants have pleaded themselves out of court. The argument on the motion is that, the agents and servants being free from all blame, the limited liability law is not applicable to the case, for, if the owners were guilty of negligence, the law does not entitle them to any relief; and, if not guilty, they are not liable, even to a limited extent. The motion was denied by a pro forma ruling at the time, which I now confirm after due deliberation. The rule itself and the decisions of the supreme court emphatically declare the right of parties in the situation of the libelants to have in one proceeding in admiralty a full and final determination of all questions affecting their liability, and, if exempt from all liability, to have a decree forever foreclosing the right to litigate concerning the same matter. The purpose of the rule, and the power of the supreme court to make it, have been several times explained in the decisions of that court. In the case of The Benefactor, 103 U. S. 239–250, Mr. Justice Bradley, in the opinion of the court, declares the purpose of the rule thus:

"Hence this court, in preparing the rules of procedure for a limitation of liability, deemed it proper to allow a party seeking such limitation to contest any liability whatever."

And again, in the case of Providence & N. Y. S. S. Co. v. Hill Manuf'g Co., 109 U. S. 578–607, 3 Sup. Ct. 379, 617, the same learned justice makes the following comments:

"The rules further provide that the shipowners, making suitable allegations for the purpose, shall be at liberty to contest their liability, or the liability of the vessel, to pay any damages, as well as to show that, if liable, they are entitled to a limitation of liability under the act; and that any parties claiming damages may contest the right of the shipowners to exemption from liability, or to the benefit of a limited liability. * * * We are clearly of opinion that the authority thus vested in this court was adequate, and sufficient to enable it to make the rules before referred to. The subject is one preeminently of admiralty jurisdiction. The rule of limited liability prescribed by the act of 1851 is nothing more than the old maritime rule administered in courts of admiralty in all countries except England, from time immemorial; and, if this were not so, the subject-matter itself is one that belongs to the department of maritime law. The adoption of forms and modes of proceeding requisite and proper for giving due effect to the maritime rule thus adopted by congress, and for securing to shipowners its benefits, was therefore strictly within the powers conferred upon this court; and, where the general regulations adopted by this court do not cover the entire ground, it is undoubtedly within the power of the district and circuit courts, as courts of admiralty, to supplement them by additional rules of their own. * * * In promulgating the rules referred to, this court expressed its deliberate judgment as to the proper mode of proceeding on the part of shipowners for the purpose of having their rights under the act declared and settled by the definite decree

v.66 f.no.4—37

of a competent court, which should be binding on all parties interested, and protect the shipowners from being harassed by litigation in other tribunals. Unless some proceeding of this kind were adopted, which should bring all the parties interested into one litigation, and all the claimants into concourse for a pro rata distribution of the common fund, it is manifest that in most .cases the benefits of the act could never be realized.   Cases might occur, it is true, in which the shipowners could avail themselves of those benefits by way of defense alone,—as where both ship and freight are totally lost, so that the owners are relieved from all liability whatever.   But even in that case, in the absence of a remedy by which they could obtain a decree of exemption as to all claimants, they would be liable to a diversity of suits, brought perhaps in different states, after long periods of time, when the witnesses have been dispersed, and issuing in contrary results before different tribunals; whilst in the ordinary cases, where a limited liability to some extent exists, but to an amount less than the aggregate claims for damages, so as to require a concourse of claimants and a pro rata distribution, the prosecution of separate suits, if allowed to proceed, would result in a subversion of the whole object and scheme of the statute.   The question to be settled by the statutory proceedings, being—First, whether the ship or its owners are liable at all (if that point is contested, and has not been decided); and, secondly, if liable, whether the owners are entitled to a limitation of liability,—must necessarily be decided by the district court having jurisdiction of the case; and, to render its decision conclusive, it must have entire control of the subject, to the exclusion of other courts and jurisdictions.   If another court may investigate the same questions at the same time, it may come to a conclusion contrary to that of the district court; and, if it does (as happened in this case), the proceedings in the district court will be ·thwarted, and rendered ineffective to secure to the shipowners the benefit of the statute."

I am required, therefore, to decide, in the first place, whether the said explosion and wrecking of the Annie Faxon happened in consequence of any negligence on the part of the libelants, their officers, agents, or employés; and, if yea, whether the disaster was so caused without the knowledge or privity of the libelants.   The inquiry is thus divisible into two parts, because responsibility attaches where negligence on the part of any officer, agent, or servant causes injury; but in every such case the limited liability law may be invoked by the owner, if he personally, or, if a corporation, the managing officers thereof, be free from culpability.   Craig v. Insurance Co., 141 U. S. 646, 12 Sup. Ct. 97.   After giving the testimony full consideration, I find that the boiler was made of iron, and it had been in use many years.   It had been cracked ، and blistered in several places, and had been patched a number of times. In June preceding the explosion one of the important sheets of the boiler, known as the "mud ring," was replaced by a new one, and some patching was done.   In making these last repairs the old iron was broken by hammering, showing that it had become brittle from crystallization.   I conclude, therefore, that the explosion occurred because the boiler was defective, and that there was negligence on the part of some one in the service of libelants in continuing the use of a boiler so old as the one in question, and without having it properly tested and inspected after the last repairs were made. Rev. St. § 4418, requires that the boiler of every steam vessel shall be inspected by the local inspector before being used.   Manifestly, to comply with this law according to the intent thereof, every sheet of which a boiler is composed must be inspected and subjected to the prescribed test; and the law was violated by using

the boiler after the new mud ring had been put in without an official inspection. Posey v. Scoville, 10 Fed. 140. The engineer in charge of the boiler was capable, experienced, and duly licensed. The libelants also employed competent men as master mechanics and superintendents to furnish everything necessary in the way of materials, equipments, and machinery for their vessels, and to attend to the inspection thereof, and keep the same in repair. And there is no evidence tending to prove that any managing officer had personal knowledge of the age or condition of the boiler, or of any negligence or violation of law in using the same without having it properly tested and inspected. Under these facts the owners are not exempt, but they are entitled to the limitation of liability fixed by the statute.

It is not pretended that any managing officer of the petitioning corporations did have actual personal knowledge of the defective condition of the boiler, or of the failure to inspect the same after the alterations were made. But it is insisted that knowledge must be imputed to them, or that they are guilty of negligence for failure to acquaint themselves with facts which could have been discovered if they had been vigilant. This position, if sustained by the courts, must result in fastening personal liability on shipowners for the negligence of their agents or servants, contrary to the terms of the law, or compel them to personally inspect their vessels and the machinery therein, and see to keeping the same in repair, and attend to the official inspection, and to personally comply with every exaction of the steamboat inspection laws, as a condition precedent to a right to a limitation of liability for damages caused by any mishap, which is equally contrary to the intent of congress. Many owners of vessels, and good managers of corporations engaged in transportation business, are obliged to employ persons skilled in the art of constructing machinery and equipments for vessels, so as to secure the highest degree of safety in navigation, because of their own lack of technical knowledge. And the limited liability law was intended to encourage capitalists and persons of that class to invest money in ships. In the case of Transportation Co. v. Wright, 13 Wall. 104–123, Mr. Justice Bradley, the great expounder of this law, declares:

"The great object of the law was to encourage shipbuilding, and to induce capitalists to invest money in this branch of industry. Unless they can be induced to do so, the shipping interests of the country must flag and decline. Those who are willing to manage and work ships are generally unable to build and fit them. They have plenty of hardiness and personal daring and enterprise, but they have little capital. On the other hand, those who have capital, and invest it in ships, incur very large risk in exposing their property to the hazards of the sea, and to the management of seafaring men, without making them liable for additional losses and damage to an indefinite amount."

In behalf of the injured passengers and the representatives of those who were killed it is contended that, as to them, by force of section 4493, Rev. St., the owners must be held liable to the full extent of the damages sustained, because of their failure to comply with the provisions of section 4418, Id., as to inspection of the boiler after putting in the new mud ring. It is said that section 4493 is

a later enactment than section 4283, and makes an exception in favor of injured passengers. There is, however, another statute, later still, to be considered. I refer to the act of June 26, 1884, entitled "An act to remove certain burdens on the American merchant marine and encourage the American foreign carrying trade and for other purposes." 1 Supp. Rev. St. (2d Ed.) 440. The eighteenth section of said act reads as follows:

"That the individual liability of a ship-owner, shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending. Provided that this provision shall not affect the liability of any owner incurred previous to the passage of this act, nor prevent any claimant from joining all the owners in one action: nor shall the same apply to wages due to persons employed by said ship-owners."

By the fourth section of the act of June 19, 1886 (1 Supp. Rev. St. [2d Ed.] 494), the provisions of the section above quoted, as well as sections 4282–4289, are extended so as to apply to all vessels used on lakes and rivers or in inland navigation, including canal boats, barges, and lighters. By the general maritime law as understood and administered in continental Europe, shipowners are not held personally liable for damages caused by torts or negligence in connection with the operation of vessels, if personally free from blame; and in England, by acts of parliament, the right to similar immunity is given. While the rule of respondeat superior was enforced in such cases in this country, American shipping was at a very great disadvantage in competition for foreign commerce. The object which congress had in view in enacting the limited liability law was to build up the American merchant marine by relieving American shipowners from burdensome liabilities, from which European competitors were already free. Section 4493 was first enacted by congress as section 30 of the act of 1852, revising the laws regulating the use, and providing for the inspection, of steam vessels. The title as well as the body of the act shows the intent of congress to provide for the better security of life on board of steam vessels, and, as a means to that end, to subject owners and officers to severe penalties for neglecting to comply with any of its requirements. In the case of Sherlock v. Alling, 93 U. S. 99–108, the supreme court held that under this law the master, owner, and vessel are liable for damages sustained by a passenger from any neglect to comply with the provisions of the law, no matter where the fault may lie. The intent to hold owners liable for full damages to passengers suffering injury through any neglect or failure to comply with the steamboat inspection laws, or through known defects in the steaming apparatus or hull, was adhered to in the general revision of the permanent laws of the United States; and at the same time congress persisted in the policy of relieving all proprietors of vessels not employed in inland navigation from liability beyond the value of vessel and pending freight, by re-enacting the limited liability law, and so we have sections 4283 and 4493 both in the Revised Statutes. With both sections standing together as re-enactments of the same date, and

the supreme court having, in the case of Sherlock v. Alling, given to the latter a broad construction, there was room for doubt as to the legal rights of parties in cases likely to arise, for, if the facts of a case should bring it within both sections, it would be extremely difficult, if not impossible, to determine which to regard as paramount. The latest, and therefore controlling, expressions of legislative will on the subject are the section above quoted from the act of 1884, and the act of 1886, extending its provisions to every description of vessel employed on lakes, rivers, and in inland navigation. In Butler v. Steamship Co., 130 U. S. 527–558, 9 Sup. Ct. 612, Mr. Justice Bradley criticizes the law of 1884, saying, on page 554, 130 U. S., and page 612, 9 Sup. Ct., after stating only a part of the provisions of the eighteenth section:

"The language is somewhat vague, it is true; but it is possible that it was intended to remove all doubts of the application of the limited liability law to all cases of loss and injury caused without the knowledge or privity of the owner."

The language of the act, if vague, is nevertheless comprehensive. Its title indicates a purpose to relieve shipowners from burdens, and the proviso to section 18 makes an exception of "wages due to persons employed by said shipowners." What other exceptions do the rules for construing statutes admit of? I think that the maxim, "Expressio unius est exclusio alterius," may with great propriety be applied here. Congress certainly intended to relieve shipowners of some burden of liability by enacting the eighteenth section. Then, what kind of liability theretofore imposed was removed by this law? The inquiry forces me to conclude that congress intended to encourage investments of capital in all kinds of vessels, and to authorize persons to become owners of steam vessels with freedom to intrust to others the entire burden of care in the management thereof, and with a right to the same immunity from claims for damages, in case of any disaster, that the law extends to owners of sailing vessels. In accordance with this opinion, a decree will be entered that, upon payment into court of the amount of the appraised value of the vessel and pending freight for the benefit of the several claimants, the libelants be forever released from all liability for damages on account of said explosion and wreck.