THE ERIE LIGHTER 108.

(District Court, D. New Jersey. April 16, 1918.)

1. ADMIRALTY ⊜⟶2—JURISDICTION.
    A person who has a cause of action of admiralty cognizance has always been entitled to seek his remedy in either the common-law courts, where they are competent to give it, or in the admiralty courts.

2. SHIPPING ⊜⟶209(1)—LIMITATION OF LIABILITY—PROCEEDING.
    In a proceeding in admiralty by a shipowner to limit his liability in accordance with Rev. St. §§ 4283–4289, as amended by Act June 26, 1884, c. 121, 23 Stat. 57, and Act June 19, 1886, c. 421, 24 Stat. 80 (Comp. St. 1916, §§ 8021–8028), the court may, if the owner is entitled to limit his liability, proceed and determine whether it is liable at all, but if not entitled to a limitation of liability the proceeding should be dismissed and the claimant left to assert his rights in whatever forum he desires; the fact that Supreme Court Admiralty Rule 56 (29 Sup. Ct. xxxi) authorized the owner to deny liability generally not changing the rule.

3. SHIPPING ⊜⟶208—LIMITATION OF LIABILITY—"PRIVITY OR KNOWLEDGE OF OWNER."
    Where a corporate owner sought to limit its liability pursuant to Rev. St. § 4283, authorizing limitation for loss or destruction or damage or injury incurred without the privity or knowledge of such owner, the privity or knowledge referred to is that of the managing officers of the corporation.

4. SHIPPING ⊜⟶208—LIMITATION OF LIABILITY—MANAGING OFFICERS—"PRIVITY OR KNOWLEDGE OF OWNER."
    The superintendent of the marine department of a railroad company which owned vessels is a managing officer, and his knowledge or privity is that of the company within Rev. St. § 4283, relating to limitation of liability.

5. SHIPPING ⊜⟶208—LIMITATION OF LIABILITY—NEGLIGENCE OF OWNER OR AGENTS—"PRIVITY OR KNOWLEDGE OF OWNER."
    Where the owner of a vessel employs other persons to perform duties ordinarily imposed by law upon him, such as equipment, etc., and due diligence is exercised in selecting competent persons, losses and damage caused through their fault without the knowledge or complicity of the owner are done or occasioned without his privity or knowledge within Rev. St. § 4283, relating to limitation of liability.

6. SHIPPING ⊜⟶209(3)—LIMITATION OF LIABILITY—EVIDENCE.
    In a proceeding by the owner of a lighter to limit its liability for the death of the captain who was struck by a corner piece of one of the lighter's bits which was wrenched from its fastenings in towing, held, that the captain was not guilty of contributory negligence.

7. SHIPPING ⊜⟶209(3)—LIMITATION OF LIABILITY—EVIDENCE.
    In a proceeding by a railroad company to limit its liability on account of the death of the captain of one of its lighters, evidence held insufficient to show that its managing agent in charge of such vessels had or was charged with knowledge of the defect and to warrant limitation of liability under Rev. St. § 4283, on the ground that the accident occurred without the knowledge or privity of the owner.

8. COMMERCE ⊜⟶27(5)—INJURIES TO SERVANT—WHAT LAW GOVERNS.
    Where decedent at the time he received his fatal injuries was employed in interstate commerce by a railroad company on one of its boats which was then being used for that purpose, the rights and responsibilities of the parties must be adjudged according to the provisions of the federal Employers' Liability Act so far as applicable.

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **MASTER AND SERVANT** &#9901;129(1)—INJURIES TO SERVANT—LIABILITY OF MASTER.

To support a recovery under the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1916, §§ 8657–8665), against a railroad company engaged in interstate commerce on account of the death of the captain of its lighter who was struck by a part of one of the lighter's bits which was wrenched off in towing, the defect must have been the result of negligence on the part of the company.

10. **MASTER AND SERVANT** &#9901;101, 102(8)—INJURIES TO SERVANT—SAFE PLACE AND APPLIANCES.

It is the duty of the master to exercise reasonable care to provide its employés with a reasonably safe place in which to work and with reasonably safe appliances to work with.

11. **MASTER AND SERVANT** &#9901;217(24), 226(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

The captain of a lighter owned and operated by a railroad company in interstate commerce transportation did not assume the risk of negligence of the company, and, where it did not appear that he knew of any defect in one of the bits of the lighter, part of which was wrenched off in towing, he cannot be deemed to have assumed the risk of such injury.

12. **MASTER AND SERVANT** &#9901;278(3)—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

Where the captain of a lighter owned by a railroad company was killed when struck by a part of the cap of one of the lighter's bits wrenched off in towing, evidence *held* to warrant a finding that the injury was the result of a defect in the lighter which was due to the railroad company's negligence.

13. **SHIPPING** &#9901;204—LIMITATION OF LIABILITY—EXTENT OF LIMITATION.

Where the captain of a lighter which was being towed by a tug was killed as a result of a structural defect in the lighter, the owner's liability under Rev. St. § 4283, declaring that the liability of the owner of any vessel, etc., shall in no case exceed the value and interest of such owner in such vessel and her freight, should be limited to the value of the lighter, there being no freight pending, and the value of the tug need not be included.

14. **DEATH** &#9901;86(1)—ACTIONS—RECOVERY.

Under the federal Employers' Liability Act, recovery for the death of an employé leaving a widow and minor children should be for such a sum as will compensate the widow and children for the deprivation of a reasonable expectation of pecuniary benefits. at their present value, that would have resulted from the continued life of the deceased.

15. **DEATH** &#9901;86(2)—ACTIONS—RECOVERY.

In the case of children the damages may include the loss of that care, counsel, training, and education which they might reasonably receive from their father and which can only be supplied by the service of another for compensation.

16. **DEATH** &#9901;58(2)—DAMAGES—PECUNIARY LOSS.

There is a presumption that a widow and minor children sustained a pecuniary loss by reason of the death of the husband and father, and such presumption will sustain recovery by the administrator under the federal Employers' Liability Act, without proof of actual loss as in ordinary cases.

In Admiralty. Petition of the Erie Railroad Company, as owner of a lighter, known as Erie Lighter 108, for limitation of liability. On final hearing. Liability limited.

Collins & Corbin, of Jersey City, N. J., for petitioner.
Alexander Simpson, of Jersey City, N. J., for claimant.

HAIGHT, District Judge. This is a proceeding, instituted pursuant to Admiralty Rules 54–57 of the Supreme Court (29 Sup. Ct. xxxi, xxxii), to procure the benefits of the limitation of liability provided for in sections 4283–4289 of the Revised Statutes, as amended by the Acts of June 26, 1884, and June 19, 1886 (23 Stat. L. 57; 24 Stat. L. 80; U. S. Comp. Stat. 1916, §§ 8021–8028). There is but one claimant. The claim is based on personal injuries which resulted in death. Several jurisdictional questions were disposed of when the matter was previously before the court on exceptions to the petition. The additional questions which have arisen on final hearing can be better stated after the general facts have been outlined.

On December 23, 1914, one Theodore Thomassen was, as he had been for some time, employed by the petitioner as the captain of one of its lighters, known as "Erie Lighter 108," which was used in transporting freight in and about the harbor of New York. On the date last mentioned, while loaded, she was pulled from alongside a dock in Weehawken, in the state of New Jersey, where she was moored, by one of the petitioner's tugs, known as the "Waverly," to be towed to Pier 6, Bush Dock, in the city of Brooklyn, state of New York, where she was to discharge her cargo. When she was clear of the dock and out in the Hudson river, the hawsers that had been used in pulling her out were released. Thereupon one end of a spliced loop of rope, about 6 fathoms in length and 1¾ to 2 inches thick, known as a "strap," was placed over the forward bit of the tug, and the strap, so fastened at one end, was then thrown to the captain of the lighter. It was his duty to place the other end over the forward starboard bit of the lighter. It was intended, as soon as one end of the lighter had thus been made fast to the forward end of the tug, to permit the lighter to drift with the tide until it had assumed a position parallel with the tug, and then to pass another strap from the afterbit of the tug to a corresponding bit on the lighter, so that the lighter could be towed alongside of the tug. When the first-mentioned strap was passed to the captain of the lighter, he immediately placed it over the proper bit of the lighter; but, there then being some slack in the strap, a part of it slipped down over the starboard corner of the lighter. Suddenly, due to the action of the tide (the lighter being in the act of drifting and the tug being held stationary against the tide), the slack in the strap was violently taken up, and the cornerpiece of the cap, which was mounted on the log rail of the lighter, was thereby wrenched from its fastenings, and struck the captain of the tug on the head, inflicting a wound from which he subsequently died.

The administrator of his estate instituted a suit in one of the state courts of New Jersey against the petitioner, under the federal Employers' Liability Act of 1908 and supplements (35 Stat. L. 65; 36 Stat. L. 291 [Comp. St. 1916, §§ 8657–8665]), to recover, for the benefit of his widow and children, the damages which they suffered through his death. The petitioner thereupon filed a petition in this court to limit its liability, alleging that the injuries which deceased received occurred without its privity or knowledge. It also, pursuant to Admiralty Rule 56 of the Supreme Court (29 Sup. Ct. xxxii), de-

nied any liability for the accident. The claimant, after his exceptions were overruled, filed an answer and claim, the effect of which was to put in issue both the petitioner's right to limited liability, and its claim to exemption from any liability.

[1, 2] 1. It is necessary, primarily, to determine whether the petitioner is entitled to limit its liability. If it is, this court may undoubtedly proceed to determine whether it is liable at all, and, if so, to fix and assess the damages that should be awarded the claimant. That is what the Supreme Court rules sought to accomplish. The Benefactor, 103 U. S. 239, 26 L. Ed. 351; Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 592, 595, 602, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038; Butler v. Boston S. S. Co., 130 U. S. 527, 552, 9 Sup. Ct. 612, 32 L. Ed. 1017; White v. Island Transportation Co., 233 U. S. 346, 34 Sup. Ct. 589, 58 L. Ed. 993; The Annie Faxon (D. C. Wash.) 66 Fed. 575, 577, affirmed 75 Fed. 312, 21 C. C. A. 366 (C. C. A. 9th Cir.); Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438 (C. C. A. 1st Cir.). On the other hand, if the petitioner may not avail itself of the limited liability statutes, it would seem, both on authority and reason, that, at least without claimant's consent, this court is without jurisdiction to proceed further, but must dismiss the proceeding, leaving the claimant free to pursue his remedy in the courts of New Jersey. It was expressly so held by the Circuit Court of Appeals of the First Circuit in Quinlan v. Pew, 56 Fed. 111, 5 C. C. A. 438. Such also is the necessary conclusion to be drawn from the disposition which was made of such proceedings, when the owners were held not to be entitled to limit their liability, in Weisshaar v. Kimball S. S. Co., 128 Fed. 397, 63 C. C. A. 139, 65 L. R. A. 84 (C. C. A. 9th Cir.); Parsons v. Empire Transp. Co., 111 Fed. 202, 49 C. C. A. 302 (C. C. A. 9th Cir.); In re Myers Excursion & Navigation Co. (D. C. S. D. N. Y.) 57 Fed. 240, affirmed sub nom. The Republic, 61 Fed. 109, 9 C. C. A. 386 (C. C. A. 2d Cir.). It was also held in The Dauntless (D. C. N. D. Cal.) 212 Fed. 455, affirmed sub nom. Shipowners' & Merchants' Tugboat Co. v. Hammond Lumber Co., 218 Fed. 161, 134 C. C. A. 575 (C. C. A. 9th Cir.), that, where there is but a single claim and the value of the vessel exceeds the amount of the claim, the petition for limitation of liability should be dismissed and the claimant permitted to prosecute his action in the state court. A person who has cause of action of admiralty cognizance has always been entitled to seek his remedy in either the common-law courts, where they are competent to give it, or in the admiralty courts (Judiciary Act of 1789, § 9, 1 Stat. L. 76; Judicial Code of 1911, §§ 24, 256 [Comp. St. 1916, §§ 991, 1233]).

It is not to be presumed, therefore, that the Supreme Court, in adopting the rules of practice for limited liability cases, intended to override the provisions of the last-mentioned statutes in cases where there was no right in an owner to limit his liability. The purpose of the rules is set forth in Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, 109 U. S. at 594, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038. It is true that rule 56 permits an owner to assert, not only his right to limitation of liability, but also his exemption from all liability; but this was incorporated, as pointed out in that case and in The Benefactor,

supra, to overcome the hardship of the English rules of practice which required an owner, seeking the benefit of the limited liability law, to first confess general liability. The only ground for an owner to come into admiralty is because of his asserted right to limit his liability. If it is found that he is not entitled to that right, for the court to go further and determine general liability, etc., would be to deprive a claimant of the choice of forums given to him by the statute and deprive him of his right to trial by jury. This is an important consideration, as a great many limited liability cases, since the decision in White v. Island Transp. Co., 233 U. S. 346, 34 Sup. Ct. 589, 58 L. Ed. 993, deal only with a single claim arising out of personal injury.

[3, 4] Whether the petitioner is entitled to a limitation of liability, of course, depends upon whether the damages which the claimant seeks to recover were done or occasioned without the petitioner's "privity or knowledge," within the meaning of the Limited Liability Act. As the petitioner is a corporation, its "privity or knowledge" must be that of its managing officers. Craig v. Continental Ins. Co., 141 U. S. 638, 646, 12 Sup. Ct. 97, 35 L. Ed. 886. While ordinary agents and servants, including a master of a vessel, are not within that catagory, a "managing officer" is not necessarily one of the head executive officers, but is any one to whom the corporation has committed the general management or general superintendence of the whole or a particular part of its business. The Colima (D. C. S. D. N. Y.) 82 Fed. 665; Parsons v. Empire Transp. Co., 111 Fed. 202, 49 C. C. A. 302 (C. C. A. 9th Cir.), certiorari denied 183 U. S. 699, 22 Sup. Ct. 935, 46 L. Ed. 396; Oregon Lumber Co. v. Portland & Asiatic S. S. Co. (D. C. Or.) 162 Fed. 912; Sanbern v. Wright & Cobb Lighterage Co. (D. C. S. D. N. Y.) 171 Fed. 449, affirmed 179 Fed. 1021, 102 C. C. A. 666 (C. C. A. 2d Cir.); In re Jeremiah Smith & Sons, Inc., 193 Fed. 397, 113 C. C. A. 391 (C. C. A. 2d Cir.); Boston Marine Ins. Co. v. Metropolitan Redwood Lumber Co., 197 Fed. 703, 117 C. C. A. 97 (C. C. A. 9th Cir.); The Teddy (D. C. W. D. N. Y.) 226 Fed. 498. The petitioner, long before the accident in question, had committed the general management and superintendence, including maintenance and repair of its vessels, to a superintendent of its marine department. The latter was therefore clearly a managing officer of the corporation within the before-mentioned rule, and his "privity or knowledge," if any, is chargeable to the petitioner.

[5] It is also entirely well settled that an owner, and, in the case of a corporation, the managing officer or officers (in this case the superintendent of the marine department), may employ others to perform the duties ordinarily imposed by law upon the owner, such as equipment, examination, repairs, etc., and, if due diligence is exercised in selecting persons competent for such work, losses or damages done or occasioned through their fault, without actual complicity or knowledge on the part of the owner, are done or occasioned without the "privity or knowledge" of the owner, within the meaning of the Limited Liability Acts. Craig v. Continental Ins. Co., supra; The Annie Faxon (D. C. Wash.) 66 Fed. 575, affirmed 75 Fed. 312, 21 C. C. A. 366 (C. C. A. 9th Cir.); The Colima, supra; The Jane Grey (D. C.

Wash.) 99 Fed. 582; Van Eyken v. Erie R. R. (D. C. E. D. N. Y.) 117
Fed. 712; McGill v. Michigan S. S. Co., 144 Fed. 788, 75 C. C. A.
518 (C. C. A. 9th Cir.), certiorari denied 203 U. S. 593, 27 Sup. Ct.
782, 51 L. Ed. 332; Oregon Lumber Co. v. Portland & Asiatic S. S.
Co., supra; Boston Marine Ins. Co. v. Metropolitan Redwood Lumber
Co., supra; Quinlan v. Pew, supra; The Tommy, 151 Fed. 570, 573,
81 C. C. A. 50 (C. C. A. 2d Cir.). See, also, The Republic, 61 Fed. 109,
9 C. C. A. 386 (C. C. A. 2d Cir.).

[6, 7] It is necessary to examine the facts in the light of these rules,
and ascertain the exact cause of the accident. I am unable to find any-
thing in the evidence to warrant the conclusion that the accident was
due to any carelessness or negligence on the part of those in charge of
the tug, either in the manner in which the strap was passed to the cap-
tain of the lighter or in the navigation of the tug. So far as the evi-
dence shows, all of these things were done in the usual and customary
manner. Nor can I perceive—and the evidence does not demonstrate
—how the claimant's intestate was in any way chargeable with con-
tributory negligence. It is claimed that he should not, in the proper
discharge of his duties, have permitted the strap to fall down over the
side of the lighter; but it is not shown how he could, in the exercise
of reasonable care, have prevented it. In fact, all of the evidence is
uncontradicted to the effect that it was necessary for him, as soon as
he had passed the strap over the bit of the lighter, to immediately step
back because of the danger of being caught by the strap when the slack
would be taken up. He was required to act with great haste. Neither
do I see how, under these circumstances, it could be reasonably ex-
pected that he should lean over the side of the lighter and pick up the
part of the strap which had fallen down over the side. It is therefore
clear that the accident was either one of those unavoidable occurrences,
for which no one in law is responsible, or that it was due to either
faulty construction of the lighter or to the fact that the lighter had be-
come out of repair. There is no evidence to show that the manner in
which the lighter was constructed was not that which had been there-
tofore customarily followed.

It appears that this lighter had been rebuilt, as respects decks, sides,
and rails, some two or three months before the accident. The re-
building had been under the charge of experienced, and so far as ap-
pears entirely competent, carpenters, who had been detailed to do that
work by the superintendent of the marine department. It was the
custom of the petitioner to have its vessels inspected to ascertain the
need of repairs from time to time. The practice followed in that re-
spect was this: The master or captain of the vessel was required at
different times to make written reports, stating the condition of the
various parts of the vessel. If any report showed that the vessel was
in need of repairs, an inspector, detailed by the superintendent of the
marine department, made an examination and a report to the superin-
tendent, and thereupon the repairs were made by ship carpenters or
other qualified mechanics. In some cases supplementary examinations
were made by such carpenters. At various times, irrespective of the
reports, examinations were made. There is no evidence whatever to

show that if, in rebuilding the vessel, rotten wood was used on that part of the log rail to which the cap, which inflicted the decedent's injuries, was attached, as is suggested by plaintiff's proofs, any knowledge of that fact was brought to the attention of the superintendent of the marine department, or any facts which in law would charge him with that knowledge within the meaning of the Limited Liability Statutes, as above construed. Nor is there any evidence from which his privity or knowledge that there had been any neglect in respect to inspection could be inferred. It follows therefore that, if the petitioner is liable for the injuries which resulted in the decedent's death, it is entitled to limitation of its liability.

[8] 2. The next question is whether the petitioner is liable at all. In this respect, as the decedent was, at the time he received the fatal injuries, employed in interstate commerce by the petitioner, a common carrier by railroad, on one of its boats which was then being used for that purpose, I think that the rights and responsibilities of the parties must, as claimant contends, be judged according to the provisions of the federal Employers' Liability Act, in so far as they are applicable. Erie R. R. v. Jacobus, 221 Fed. 335, 137 C. C. A. 151 (C. C. A. 3d Cir.); The Passaic (D. C. E. D. N. Y.) 190 Fed. 644, affirmed 204 Fed. 266, 122 C. C. A. 466 (C. C. A. 2d Cir.).

[9-12] Since I have heretofore found that the decedent's injuries were in no respect due to his own negligence or that of his fellow servants, the petitioner's liability, if any, must be found in some defect or insufficiency in the lighter on which decedent was working. For such a defect to be actionable it must have been the result of negligence on the part of the petitioner. Seaboard Air Line v. Horton, 233 U. S. 492, 502, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. As the rail to which the cap that caused the injury was attached was rebuilt two or three months before the accident, there seems to be no doubt, if the petitioner is to be charged with negligence, that the same cannot be found in any failure to inspect, but must exist, if at all, in what was done or neglected to be done at the time the boat was rebuilt. The cap itself gave no indication that it was not in good condition. It had apparently been fastened to the guard rail in a proper manner. The claimant, however, produced a ship carpenter, who testified that, in his judgment, under all the circumstances as detailed in the evidence at the time he testified (they were not afterwards changed in any material respect), the log rail must have been in a rotted or unsound condition, otherwise the cap could not have been wrenched off in the way that it apparently was. He claimed that, if the wood of the log rail had been sound, the spikes which fastened the cap to it would have been bent much more than they were; moreover, he gave it as his opinion that, if the log rail had been sound, the cap could not have been pulled off by the strap. On the other hand, the evidence produced by the petitioner, while recognizing that a rotten or unsound log rail would unquestionably account for the cap coming off in the way that it did, is to the effect that the cap could conceivably have been wrenched off even though the log rail was sound, because of the manner in which the log rail and the cap

were joined; the side of the cap being rounded and the outward side of the log rail being beveled so as to make a crevice at the point of junction.

Even though the log rail appeared on the outside to be sound, the evidence is uncontradicted that it might readily have been actually rotted inside, and that such a condition would have manifested itself to the person who spiked the cap to the rail while the spikes were being driven. Upon the whole, taking into account the appearance of the cap, the size of the spikes which fastened it to the rail (they were six to eight inches long), the evidence on the point, and the probabilities, I am led to the conclusion that the claimant's version is the correct one—that the wood of the log rail was not sound. The petitioner was under a duty to the decedent to exercise reasonable care to provide him with a reasonably safe place in which to work and with reasonably safe appliances to work with. Seaboard Air Line v. Horton, supra; Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235. As the evidence is uncontradicted that the defective condition of the log rail, and hence the insecurity of the fastening of the cap, should have been ascertained when the cap was being fastened to the rail, and as the evidence also indicates that it could readily have been foreseen that the cap might be violently wrenched from the rail by the strap under certain conditions, if the rail were unsound, it is impossible to escape the ultimate conclusion that the defect in the lighter was due to the petitioner's negligence. The decedent did not assume the risk of the petitioner's negligence in that respect, and, as there is nothing to show that he knew or should have known of the defective condition of the rail and cap, it follows that the claimant is not barred from recovery on the doctrine of assumption of risk. Seaboard Air Line v. Horton, supra; Choctaw, Oklahoma, etc., R. R. Co. v. McDade, supra. Hence the petitioner is liable for the injuries which resulted in the decedent's death. I think the specifications of negligence in the claimant's claim are broad enough to sustain a recovery based on the negligence found.

[13] 3. As the decedent's injuries were in no respect proximately due to any fault of the tug, or those in charge of her operation, but wholly to a structural defect in the lighter, I have no doubt that the petitioner's liability should be limited to the value of the latter vessel. Van Eyken v. Erie R. R. Co. (D. C. E. D. N. Y.) 117 Fed. 712, 717; The W. G. Mason, 142 Fed. 913, 915, 74 C. C. A. 83 (C. C. A. 2d Cir.); The Sunbeam, 195 Fed. 468, 115 C. C. A. 370 (C. C. A. 2d Cir.). If the decision of the Circuit Court of Appeals of the Sixth Circuit in Thompson Towing & Wrecking Ass'n v. McGregor, 207 Fed. 209, 124 C. C. A. 479, is at variance with this conclusion, I do not think that that case can well be reconciled with the decisions of the Circuit Court of Appeals of the Second Circuit, above cited. The latter, I think, present the view which is more in harmony with the spirit in which the Supreme Court has many times held that the Limited Liability Act should be construed. Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, 109 U. S. 589, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038; Butler v.

Boston S. S. Co., supra, 130 U. S. 549, 9 Sup. Ct. 612, 32 L. Ed. 1017; Richardson v. Harmon, supra, 222 U. S. 104, 32 Sup. Ct. 27, 56 L. Ed. 110; La Bourgogne, 210 U. S. 95, 120, 28 Sup. Ct. 664, 52 L. Ed. 973. To hold that a tug towing a lighter must be surrendered in order that the owner of both may limit his liability for an injury received by an employé on board the lighter, due entirely to a defect in the latter, would seem to do violence to the language of statute and the rule of construction as announced by the Supreme Court. The statute limits the owner's liability to the value of his interest in "such vessel and her freight then pending" (section 4283). This must mean the vessel or vessels which caused the injury, etc. The offending vessel in this case was the lighter. While it is true that the cap would not have been pulled off had the "strap" not been attached to the tug and the latter held stationary or nearly so (both of which were necessary to be done), the proximate cause of the accident was nevertheless the defective condition of log rail and cap of the lighter. It alone was, legally responsible. The value of the lighter has been fixed, pursuant to provisions of Rule 54 of the Supreme Court (29 Sup. Ct. xxxi); at $2,535. There was no pending freight.

[14, 15] 4. The decedent, at the time of his death, was 39 years of age. He left a widow who, at that time, was about 40 years of age, and two children, aged 10 and 7, respectively. He was earning $55 per month and was in good health. The evidence does not show, however, how much of his earnings went to his wife and children, or, for that matter, whether they received any part of them. He had, according to the mortality tables issued by the Department of Commerce in 1910, an expectancy of approximately 28 years, and his wife an expectancy of approximately 29 years. The claimant is entitled to recover a sum equivalent to compensation to the widow and children for the deprivation of a reasonable expectation of pecuniary benefits, at their present value, that would have resulted from the continued life of the deceased. Ches. & Ohio Ry. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. And in the case of the children, the damages may include the loss of that care, counsel, training, and education, if any, which they might have reasonably received from the father, and which can only be supplied by the service of another for compensation. Mich. Cent. R. R. v. Vreeland, 227 U. S. 59, 71, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176; Norfolk & Western Ry. Co. v. Holbrook, 235 U. S. 625, 629, 35 Sup. Ct. 143, 59 L. Ed. 392.

[16] While, as a corollary of the above rule, it must be shown that those for whom an administrator sues sustained some pecuniary loss by the untimely death of the deceased employé (Gulf, Colorado, etc., Ry. Co. v. McGinnis, 228 U. S. 173, 175, 33 Sup. Ct. 426, 57 L. Ed. 785; Mich. Cent. R. R. Co. v. Vreeland, supra), this does not, I think, require actual proof in a case where the beneficiaries are a widow and minor children, who, at least, are not shown to be living in a state of unjustifiable separation, as is required in a case where the beneficiaries are the parents of an adult son (Garrett v. Louisville & Nashville R. R. Co., 235 U. S. 308, 313, 35 Sup. Ct. 32, 59

L. Ed. 242), or a married daughter residing with and maintained by her husband ('Gulf, Colorado, etc., Ry. Co. v. McGinnis, supra), or other relatives as to whom common experience teaches that financial damage does not follow as a necessary consequence of the death of another. In the case of a widow and minor children, for whom the laws of all civilized states require a husband and father to furnish financial support, I think that there is a presumption of financial loss, which supplies the lack of actual proof thereof, at any rate until it is shown (as it was not in this case) that they have forfeited the right to such support. Such has been the uniform course of judicial decision, under the act in question, so far as I am aware. Gilliam v. Southern Ry. Co. (S. C.) 93 S. E. 865; Fogarty v. Northern Pacific Ry. Co., 85 Wash. 90, 147 Pac. 652, L. R. A. 1916C, 803. The United States Supreme Court has recently decided, in Minn. & St. Louis R. R. Co. v. Gotschall, 244 U. S. 66, 37 Sup. Ct. 598, 61 L. Ed. 995, that a father, who by the state law is entitled to the earnings of a minor son, may recover damages for the death of the son under the act in question, although there is no evidence of pecuniary loss to him. See, also, Tobin v. Bruce (S. D.) 162 N. W. 933.

[17, 18] Without attempting to fix definitely the pecuniary loss suffered by the widow and children of the deceased, I have no hesitancy in finding that it is equal to or greater than the value of the lighter. As the statute does not require that the court which awards the damages shall apportion them among the beneficiaries (Central Vermont Ry. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Ches. & Ohio Ry. v. Kelly, supra), I shall not attempt to do so, even if it be assumed that I have such a power.

The claimant will therefore be awarded a decree for the value of the lighter. A permanent injunction against the claimant proceeding against the petitioner in the state courts of New Jersey or otherwise, to recover damages for the decedent's death, will be awarded the petitioner. Costs will not be allowed either party, as each has been partially successful in these proceedings.